WALTER A. TORMASI,                  :
                                    :
        Plaintiff,              :        Civ. No. 18-1203 (FLW) (TJB)
                                    :
      v.                      :
                                    :
GARY M. LANIGAN et al.,             :        **OPINION**
                                    :
        Defendants.              :
                                    :

**FREDA L. WOLFSON, U.S.D.J.**

## I.      INTRODUCTION

Plaintiff, Walter A. Tormasi ("Tormasi" or "Plaintiff"), is a state prisoner, presently incarcerated at New Jersey State Prison ("NJSP"), in Trenton, New Jersey. He is proceeding *pro se* with a civil-rights complaint filed under 42 U.S.C. § 1983, the New Jersey Civil Rights Act ("NJCRA"), and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Am. Compl., ECF No. 4.) Presently before the Court is a motion by defendants Gary M. Lanigan ("Lanigan"), Marcus O. Hicks ("Hicks"), Melinda Haley ("Haley"), Michelle Ricci ("Ricci"), and Carlos Negron ("Negron"), for dismissal of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 21.) Also before the Court is a motion to dismiss by defendant Dr. Abu Ahsan ("Ahsan"). (ECF No. 33.) Additionally, Tormasi has moved for default judgment against defendants Rabbi Yehuda Spritzer ("Spritzer") and Imam Jamal El-Shebli ("El-Shebli"). (ECF No. 58.) Those defendants, as well as defendant Steven Johnson have, meanwhile, procured representation by the same counsel representing Lanigan and other prison officials, and they have requested to vacate the entry of default and to join the first dismissal motion. (ECF No. 59.) For the following reasons, the entry of default against Spritzer

and El-Shebli is VACATED, the motion for default judgment is DENIED, and the dismissal

motions are GRANTED IN PART and DENIED IN PART.

## II.    BACKGROUND

### A.  Underlying Facts

Tormasi asserts that he is "actively, sincerely, and faithfully engaged in Jewish worship,"

but that, as he does not subscribe to any particular sect, he is "independently engaged in Jewish

self-practice."  (ECF No. 4 ¶ 21.)  Tormasi represents that he studies the Torah for two hours

every day and regards it as "the law of God as revealed to Moses and as recorded in the first five

books of the Hebrew Scriptures."  (*Id.* ¶ 22.)  Tormasi explains that circumcision is one of

Judaism's "highest commandments" and that, because of this, he "believes that circumcision is

indeed commanded by God and, consequently, must be performed on him."  (*Id.* ¶¶ 24–27.)

Accordingly, Tormasi asserts that, between March 2016 and November 2016, he sent

letters to the various defendants, all officials or employees of New Jersey State Prison ("NJSP"),

the New Jersey Department of Corrections ("NJDOC"), or Rutgers University Correctional

Health Care ("UCHC"), which provides medical services at NJSP, requesting circumcision

surgery consistent with his religious beliefs.  (*See id.* ¶ 30.)  These requests were unsuccessful;

Tormasi alleges that the "Defendants failed to approve circumcision surgery and/or failed to take

remedial action upon learning that circumcision surgery remained unapproved."  (*Id.* ¶ 31.)  He

further notes that his request was specifically reviewed by the NJDOC's Religious Issues

Committee ("RIC"), "which is responsible for rendering final administrative decisions on

religious matters," but that the RIC unanimously denied it.  (*Id.* ¶ 32.)  Tormasi explains that the

reasons variously given him for denial included that he needed a certification of necessity from a

rabbi, that circumcision would not be approved unless Tormasi "submitted himself to an

Orthodox-style rabbinical board," that he had not yet followed the steps for a religious

conversion, and that circumcision surgery was not medically necessary. (*Id.* ¶ 35.)

Tormasi asserts that he subsequently sent various letters to the defendants disputing these

denials and that he "exhausted all administrative remedies extended to him." (*Id.* ¶¶ 38–39.) He

notes that, "before bringing suit against Defendants, [he] supplied all Defendants with copies of

his administrative grievances and requested that they take steps to ensure that circumcision

surgery was provided." (*Id.* ¶ 40.) He alleges that, "due to his imprisonment, [he] cannot obtain

circumcision surgery without going through prison officials and associated medical personnel."

(*Id.* ¶ 42.)

### B. Procedural History

Tormasi commenced this action by filing a Complaint, accompanied by a full filing fee,

on January 26, 2018. (Compl., ECF No. 1.) Shortly thereafter, Tormasi filed an Amended

Complaint, which remains the operative pleading. (ECF No. 4.) The Amended Complaint

alleges claims under § 1983, the NJCRA, and RLUIPA, against Lanigan, Hicks, Haley, Ricci,

Steven Johnson, Negron, Spritzer, and El-Shebli (collectively, "the DOC Defendants"), as well

as two other NJSP employees, Cynthia Johnson and Rev. Warren Wilcox, Jr., and various UCHC

employees, being Dr. Ahsan, Joy Camarillo, A.P.N., Lance C. Carver, R.N., and Barbara Jordan,

R.N.[1] (*See id.*) He alleges that defendants Hicks, Haley, Ricci, Steven Johnson, Wilcox,

Spritzer, and Negron composed the RIC and were responsible for final decisions as to inmate

religious matters. (*Id.* ¶ 13; *see also id.* ¶¶ 32–33.) He further contends that Ahsan, as the

---

[1] Defendants Cynthia Johnson, Rev. Warren Wilcox, Jr., Joy Camarillo, and Barbara Jordan have not appeared in this action, and it seems that not all of them have been served. (*See* ECF No. 54.) Defendant Lance C. Carver has appeared and is due to answer the Amended Complaint by January 31, 2019. (*See* ECF Nos. 56 & 57 and Clerk's Text Order of Jan. 4, 2019.)

medical director at NJSP, was "administratively and/or clinically responsible for the management and direction of the correctional facility's medical services."  (*Id.* ¶ 17.)

Tormasi alleges that the refusal to "approve or provide circumcision surgery" substantially burdened his religious exercise, in violation of the Free Exercise Clause of both the United States and New Jersey constitutions and in violation of RLUIPA.  (*Id.* ¶¶ 41, 43.)  He also alleges that the refusal to approve circumcision surgery absent compliance with "formal Orthodox conversion protocols" constituted an improper attempt to impose the religious laws of Orthodox Judaism on Tormasi in violation of the Establishment Clause.  (*Id.* ¶¶ 45–54.)  Tormasi seeks, among other relief, a declaration that the defendants violated his constitutional rights, an injunction "requiring Defendants or their successors provide Plaintiff with circumcision surgery" and cover all costs except for five dollars, $1 million in compensatory damages, and $5 million in punitive damages.  (*Id.* at 17–18.)

Defendants Lanigan, Hicks, Haley, Ricci, and Negron filed a motion to dismiss the Amended Complaint for failure to state a claim, under Rule 12(b)(6), arguing that Tormasi's claims are barred by qualified immunity, that he fails to plead a substantial burden on his religious practice under RLUIPA, and that he fails to allege exhaustion of administrative remedies.  (ECF No. 21.)  Ahsan separately moves to dismiss the Amended Complaint, adopting the arguments from the initial dismissal motion, but also making supplemental arguments that no plausible claim is stated against him as he had no authority to make decisions concerning religious circumcision, that he is shielded by qualified immunity, and that he placed no substantial burden on Tormasi's religious practice under RLUIPA.  (ECF No. 33.)  Tormasi filed briefs opposing the motions, (ECF Nos. 34 & 37), and the moving defendants filed replies, (ECF

Nos. 40 & 41).[2]  Tormasi subsequently filed an unpermitted supplemental letter brief in sur-reply.  (ECF No. 61.)

Tormasi requested default against Spritzer and El-Shebli, who had not yet appeared. (ECF No. 51.)  The Clerk entered default against those defendants for failure to plead or otherwise defend the action.  (Clerk's Entry of Default (Dec. 17, 2018).)  On January 9, 2019, Tormasi filed a motion for default judgment against Spritzer and El-Shebli.  (ECF No. 58.) Tormasi subsequently filed a letter brief seeking to amend his motion, stating, "Insofar as § 1997e(g)(1) bars default judgments against non-replying defendants, I request that the Court . . . requir[e] Defendants Spritzer and El-Shebli to reply to my Amended Complaint."  (ECF No. 60.) Meanwhile, counsel for the DOC Defendants filed a letter brief seeking to vacate the entry of default against Spritzer and El-Shebli and to allow Spritzer, El-Shebli, and Steven Johnson to join the dismissal motion filed by the other DOC Defendants.  (ECF No. 59.)

### III.    PRELIMINARY MATTERS

Although the motions and letters concern default as to Spritzer and El-Shebli and the request of those defendants and Steven Johnson to join the dismissal motion occurred after the bulk of the motion practice, it will simplify matters if these applications are addressed first. Under Federal Rule of Civil Procedure 55, the Court "may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c); *see also Mrs. Ressler's Food Prods. v. KZY Logistics, LLC*, 675 F. App'x 136, 139 (3d Cir. 2017).  In considering whether to vacate default, a court should consider (1) whether the plaintiff will be prejudiced by a vacatur of default, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's culpable conduct led to the entry of default.  *See Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982); *see also*

---

[2]  For the sake of clarity, explanations of the parties' arguments are included in the Court's analyses of each issue, *infra*, rather than in this section.

*Sourcecorp Inc. v. Croney*, 412 F. App'x 455, 459 (3d Cir. 2011). Vacatur of a mere entry of default requires a less substantial showing than vacatur of a default judgment. *See Feliciano*, 691 F.2d at 656.

In assessing the first factor, I find that Tormasi would not be prejudiced by vacatur of the entry of default against Spritzer and El-Shebli. The action is still in a preliminary stage and Tormasi has walked back his demand for default judgment, noting he would instead accept an order requiring Spritzer and El-Shebli to answer. (*See* ECF No. 60.) Furthermore, Tormasi has consented to Spritzer and El-Shebli joining the pending dismissal motion. (*See* ECF No. 61 at ECF p. 3.)

Second, as established by this Opinion's analysis of the dismissal motions, *infra*, Spritzer and El-Shebli have at least some meritorious defenses to Tormasi's claims. Finally, counsel for the DOC Defendants represents that the only reason that Spritzer and El-Shebli (as well as Steven Johnson) were not included in the original dismissal motion is that counsel erroneously overlooked requests for representation filed by those defendants. (*See* ECF No. 59.) Thus, there seems to have been no culpable conduct by these defendants that led to their default. Accordingly, I find that Spritzer and El-Shebli have made a sufficient showing of good cause under Rule 55(c), and the entry of default against them is vacated. Accordingly, Tormasi's motion for default judgment, (ECF No. 58), is denied.

Furthermore, as Tormasi consents to Spritzer, El-Shebli, and Steven Johnson joining the dismissal motion, (ECF No. 61), that request is granted. All arguments made regarding the initial dismissal motion, (ECF No. 21), will be considered to apply equally to all of the DOC Defendants.[3]

---

[3] The Court notes that, while counsel for the DOC Defendants indicates that he will be representing defendants Spritzer, El-Shebli, and Steven Johnson, he is still not listed on the

## IV.    DISMISSAL MOTION LEGAL STANDARDS

### A. Dismissal Under Rule 12(b)(6)

In resolving a motion to dismiss for failure to state a claim, under Rule 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017), *cert. denied* 138 S. Ct. 2623 (2018); *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In addition to the allegations of the complaint, a court may consider matters of public record, documents specifically referenced in or attached to the complaint, and documents integral to the allegations raised in the complaint. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017). Nevertheless, "pro se

---

CM/ECF docket as having entered an appearance on their behalf. Counsel must promptly enter a notice of appearance as to these defendants.

litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown*

*Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**B.  42 U.S.C. § 1983 and the NJCRA Generally**

As a general matter, a plaintiff may have a cause of action under 42 U.S.C. § 1983 for

certain violations of constitutional rights. That section provides,

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress, except that in any action brought against a
> judicial officer for an act or omission taken in such officer's
> judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was
> unavailable.

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution or laws of the United States and that the alleged deprivation was

committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp.*

*Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

The NJCRA provides a similar cause of action to § 1983, stating, in relevant part,

> Any person who has been deprived of any substantive due process
> or equal protection rights, privileges or immunities secured by the
> Constitution or laws of the United States, or any substantive rights,
> privileges or immunities secured by the Constitution or laws of this
> State, or whose exercise or enjoyment of those substantive rights,
> privileges or immunities has been interfered with or attempted to
> be interfered with, by threats, intimidation or coercion by a person
> acting under color of law, may bring a civil action for damages and
> for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2(c).  Due to the intentional statutory similarities, this provision "is

interpreted as analogous to § 1983." *Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241

(3d Cir. 2012) ("To sustain a § 1983 claim, or a NJCRA claim, a plaintiff must show that a defendant had in place a custom or policy which resulted in constitutional deprivation.").

### C. Relevant First Amendment Standards

To establish a violation of the Free Exercise Clause of the First Amendment, a prisoner plaintiff must first show that a prison practice or policy has substantially burdened the practice of the prisoner's religion. *See Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017). Once a substantial burden on religious exercise is shown, the policy or practice is invalidated if it is not reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Garraway v. Lappin*, 490 F. App'x 440, 445 (3d Cir. 2012).

The Establishment Clause of the First Amendment has been interpreted as requiring "'governmental neutrality between religion and religion, and between religion and nonreligion.'" *McCreary County v. ACLU*, 545 U.S. 844, 860 (2005) (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)). This has typically been assessed under the *Lemon* test, under which a statute or governmental action must (1) "have a secular legislative purpose," (2) have a "principal or primary effect . . . that neither advances nor inhibits religion," and (3) "not foster an excessive government entanglement with religion." *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971) (internal quotation marks omitted); *see also Stratechuk v. Bd. of Ed.*, 587 F.3d 597, 604 (3d Cir. 2009). The Supreme Court has also applied other tests in assessing alleged Establishment Clause violations, such as where governmental bodies have coerced individuals to participate in a "religious exercise," *Lee v. Weisman*, 505 U.S. 577, 592–99 (1992) (originating the "coercion test"), or where a reasonable, informed person would perceive a governmental act as an

endorsement or disapproval of religion, *see Lynch v. Donnelly*, 465 U.S. 668, 688–89 (1984)

(O'Connor, J., concurring) (originating the "endorsement test").

## D.  The RLUIPA Standard

RLUIPA prevents the government from placing a substantial burden on a prisoner's

religious exercise, providing, in relevant part,

> No government shall impose a substantial burden on the religious
> exercise of a person residing in or confined to an institution . . .
> even if the burden results from a rule of general applicability,
> unless the government demonstrates that imposition of the burden
> on that person—
>
> > (1) is in furtherance of a compelling governmental interest;
> > and
> >
> > (2) is the least restrictive means of furthering that
> > compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  Thus, to state a claim under RLUIPA, a plaintiff must allege that the

prison has placed a substantial burden on the plaintiff's sincerely held religious belief.  *See*

*Washington v. Klem*, 497 F.3d 272, 277–78 (3d Cir. 2007).  If a prisoner plaintiff establishes a

substantial burden on a sincerely held religious belief, the burden shifts to the defendant to show

that the policy or practice furthers a compelling government interest and is the least restrictive

means of doing so.  *See Holt v. Hobbs*, 135 S. Ct. 853, 863 (2015).  "RLUIPA does not allow for

the recovery of money damages; in other words, a RLUIPA plaintiff may seek only injunctive or

declaratory relief."  *Parkell v. Senato*, 704 F. App'x 122, 125 (3d Cir. 2017) (citation omitted).

## V.     ANALYSIS

### A.  Exhaustion of Administrative Remedies

The DOC Defendants argue that Tormasi's Amended Complaint must be dismissed

because he "failed to allege proper exhaustion of his administrative remedies."  (ECF No. 21-1 at

13–15.) Exhaustion is a "non-jurisdictional prerequisite" and, consequently, is a "'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'" *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (emphasis omitted) (quoting *Small v. Camden County*, 728 F.3d 265, 270 (3d Cir. 2013)).

The Prisoner Litigation Reform Act of 1995 ("PLRA") provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *Ball v. Famiglio*, 726 F.3d 448, 456 (3d Cir. 2013), *abrogated on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015). The exhaustion requirement is mandatory and, thus, bars an inmate from commencing such an action without first properly exhausting available administrative remedies. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 85, 93–94 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Coulston v. Glunt*, 665 F. App'x 128, 132 (3d Cir. 2016).

The DOC Defendants argument fails for two reasons, however. First, failure to exhaust administrative remedies is an affirmative defense, which the defendant bears the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). "[T]he defendant must prove that the prisoner-plaintiff failed to exhaust *each* of his claims. There is no 'total exhaustion' rule permitting dismissal of an entire action because of one unexhausted claim." *Small*, 728 F.3d at 269 (emphasis added); *see also Jones*, 549 U.S. at 219–24. Thus, dismissal would not be warranted if it were the case, as the DOC Defendants

contend, that "Tormasi does not make a single allegation pertaining to his filing, or appealing, any administrative remedy forms, within the prison remedy system, concerning the claims raised in his Amended Complaint." (*See* ECF No. 21-1 at 15.) Instead, the DOC Defendants bear the burden of proving that Tormasi has failed to exhaust his administrative remedies as to any given claim, and they have failed to meet this burden.

Second, even were the DOC Defendants correct that a plaintiff must plead exhaustion of remedies, their assertion that Tormasi has not made "a single allegation" on this topic is patently untrue. Indeed, Tormasi specifically alleges that he "exhausted all administrative remedies," and recounts that, "before bringing suit against Defendants, Plaintiff supplied all Defendants with copies of his administrative grievances and requested that they take steps to ensure that circumcision surgery was provided." (ECF No. 4 ¶¶ 39–40.) Furthermore, Tormasi included among the exhibits to his Amended Complaint copies of numerous grievances and the responses he received to them. (*See, e.g.*, ECF No. 1-1 at ECF p. 13; ECF No. 1-2 at ECF pp. 27–28, 30–31, 47–49.) Accordingly, dismissal is denied on this basis.

## B. Qualified Immunity

The moving defendants further contend that the constitutional claims against them must be dismissed as barred by qualified immunity. (ECF No. 21-1 at 6–11; ECF No. 33-1 at 10–14.) "Qualified immunity is 'an entitlement not to stand trial or face the burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Under this doctrine, a government official is immune from claims for damages unless, interpreting the allegations most favorably to the plaintiff, they show (1) that the official violated the plaintiff's constitutional or statutory rights and (2) that the rights violated were clearly established. *Id.* at 201; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment

officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.").  While courts generally address the first prong—whether a constitutional violation is alleged—first, a court may exercise discretion in considering these elements in the order it sees fit.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Qualified immunity applies only to defendants in their individual capacities.  *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 572 n.151 (3d Cir. 2017), *cert. denied sub nom. Walker v. Farnan*, 138 S. Ct. 357 (2017) & *Williams v. Wetzel*, 138 S. Ct. 357 (2017).  Qualified immunity also protects only against claims seeking damages.  *See Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006).

The DOC Defendants argue that the denial of Tormasi's requests for a circumcision cannot support a free-exercise claim because the denial was reasonably related to legitimate penological interests.  (ECF No. 21-1 at 7–9.)  They argue that Tormasi has failed to allege facts to "demonstrate that the DOC Defendants' denial of a state-funded circumcision[4]—premised on Plaintiff's admitted refusal to participate in the established process for obtaining such a procedure—is anything other than a reasonable application of prison policies in order to fulfill legitimate penological interests."  (*Id.* at 8.)  While the DOC Defendants urge that Tormasi bears the burden of persuasion on these claims and that "great deference" must be shown to prison

---

[4]  The Court notes that the DOC Defendants argue that "the State has not actually prohibited Tormasi from receiving a circumcision[;] [i]t has simply declined to pay for one when presented with a demand by an inmate unwilling to do his part and take reasonable steps toward obtaining authorization for a costly and burdensome procedure."  (ECF No. 21-1 at 8–9.)  Meanwhile, Tormasi has represented that he did not insist that the NJDOC pay for his circumcision and that he is "fully willing to pay for his circumcision surgery upon its approval."  (ECF No. 34 at 9.)  These positions seem sufficiently close to present an opportunity for amicable resolution that the Court urges the parties not to overlook.

administrators, these positions seem to disregard the preliminary stage of this action. (*See id.*)

On this motion to dismiss for failure to state a claim, the Court must, of course, "construe the

complaint in the light most favorable to the plaintiff, and determine whether, under any

reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at

210. In any case, the DOC Defendants have not even attempted to identify any legitimate

penological interest implicated by Tormasi's request and there is no stated position of prison

administrators before the Court to be afforded deference. (*See* ECF No. 21-1.) The Court does

not foreclose the possibility that Tormasi's claim may implicate legitimate penological interests;

the conclusion here is simply that, as such interests are not clearly identifiable in the Amended

Complaint or its exhibits, they are not properly before the Court for the purposes of deciding

these motions to dismiss under Rule 12(b)(6). *See Mele*, 359 F.3d at 255 n.5.

 The DOC Defendants and Ahsan also contend, however, that there exists no

constitutional right, or at the very least no clearly established constitutional right, for a prisoner

to receive a religious circumcision. (ECF No. 21-1 at 9–11; ECF No. 33-1 at 10–14.) A right is

considered clearly established if it is "sufficiently clear that every reasonable official would have

understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664

(2012) (internal quotation marks and alterations omitted); *see also Mullenix v. Luna*, 136 S. Ct.

305, 308 (2015). This threshold is met when existing precedent has "'placed the statutory or

constitutional question beyond debate.'" *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)

(quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)). There is no question that a relevant

decision by the Supreme Court renders a right clearly established but, "if none exists, it may be

possible that a 'robust consensus of cases of persuasive authority' in the Court of Appeals could

clearly establish a right for purposes of qualified immunity." *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (quoting *Barkes*, 135 S. Ct. at 2044).

The moving defendants are correct that no such right is clearly established. As the moving defendants represent, and as the Court's independent searches have confirmed, only two federal courts seem to have considered the question of whether there exists a constitutional right to a religious circumcision: the United States District Court for the District of Connecticut, in *Vega v. Lantz*, No. 3:04CV1215(DFM), 2012 WL 5831202 (D. Conn. Nov. 16, 2012), and the District Court for the Northern District of New York, in *Celestin v. Fischer*, No. 9:12-CV-1612 (GTS/ATB), 2013 WL 5406629 (N.D.N.Y. Sept. 25, 2013.)

The *Vega* court, considering the plaintiff's claim that a prison's denial of his circumcision requests violated his free-exercise rights, concluded that qualified immunity shielded the defendants, as the plaintiff had "no clearly established right to circumcision." *See Vega*, 2012 WL 5831202 at *1, 3. The plaintiff in *Celestin* similarly alleged that a prison's denial of his request for a circumcision violated his free-exercise rights. *See Celestin*, 2013 WL 5406629 at *1. That court also found that the claim was barred by qualified immunity. *Id.* at *3.

Tormasi argues that these cases are irrelevant, as they "relied on inapposite Eighth Amendment standards" in assessing the claims before them. (ECF No. 34 at 17–18.) This is not quite accurate, however. The *Vega* court clearly acknowledged that the plaintiff had asserted a free-exercise claim but, in concluding that a constitutional right to circumcision was not clearly established (noting that "no precedent" suggested such a right), included a "cf." citation[5] to *Estelle v. Gamble*, 429 U.S. 97 (1976), which concerns Eighth Amendment claims. *Vega*, 2012

---

[5] As explained in Black's Law Dictionary, a "cf." citation "directs the reader's attention to another authority or section of the work in which contrasting, analogous, or explanatory statements may be found." *Cf.*, Black's Law Dictionary (10th ed. 2014).

WL 5831202 at *3.  The *Celestin* court, while expressing skepticism as to whether the plaintiff's claim should be considered under the First Amendment, rather than the Eighth Amendment, still explained that "even if the Court were inclined to accept Plaintiff's attempt to cast his request for a medical procedure as one of religious necessity . . . , such an acceptance would not change the fact that, during the time in question, neither Second Circuit case law nor Supreme Court case law appears to have clearly established Plaintiff's right to the procedure."  *Celestin*, 2013 WL 58312012 at *3.  Neither of these analyses suggests a reliance on Eighth Amendment, rather than First Amendment, precedent.

In any case, *Vega* and *Celestin* are not treated by the moving defendants or this Court as binding precedent, as Tormasi urges against.  (ECF No. 34 at 17–18.)  Rather, their significance is that they appear to be the *only* federal cases to have considered the question of whether a prisoner may demonstrate a violation of his rights arising from a denial of his request for a religious circumcision.  While Tormasi acknowledges "that there are no cases mandating religious circumcision surgery," he contends, relying on the Supreme Court's opinion in *United States v. Lanier*, 520 U.S. 259 (1997), that "the general free-exercise standard was sufficient to give Defendants fair notice that their actions were illegal."  (*Id.* at 16.)  Tormasi further urges, in his unpermitted sur-reply, that the Third Circuit has explained that a right may be clearly established if "a general constitutional rule already identified in the decisional law applies with obvious clarity."  (*See* ECF No. 61 (quoting *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012)).)

The Supreme Court has, in recent years, repeatedly rejected similar theories that general constitutional principles suffice to put government officials on notice that a particular type of conduct may violate constitutional rights.  Indeed, in 2015, the Supreme Court warned,

> We have repeatedly told courts not to define clearly established
> law at a high level of generality. The dispositive question is
> whether the violative nature of particular conduct is clearly
> established. This inquiry must be undertaken in light of the
> specific context of the case, not as a broad general proposition.

*Mullenix*, 136 S. Ct. at 308 (internal quotation marks, ellipsis, and citations omitted). While

acknowledging that showing a clearly established right does not require a case directly on point

and that general legal statements "are not incapable of giving fair and clear warning," the

Supreme Court has noted that, for example, "[w]here constitutional guidelines seem inapplicable

or too remote, it does not suffice for a court simply to state that an officer may not use

unreasonable force, deny qualified immunity, and then remit the case for a trial on the question

of reasonableness." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018).

To find that the defendants in this case violated Tormasi's clearly established right thus

requires more than cases simply discussing the general standards under the Free Exercise Clause.

There seem to be only two, trial-level cases addressing the question of a prisoner's right to a

religious circumcision, and both of them rejected the claim. While cases need not be *directly* on

point, there also seem to be no cases that present analogous circumstances sufficient to place

prison officials on notice that denying a circumcision request may be a constitutional violation.[6]

Accordingly, I must conclude that the defendants' refusal to grant Tormasi's requests for

circumcision did not violate any clearly established constitutional right. Thus, the free-exercise

---

[6] I do note that the District Court for the Northern District of Florida, in a potentially analogous case, considered whether a prisoner plaintiff could show RLUIPA violations based on denial of religiously motivated dental surgery. *See Muhammad v. Crosby*, No. 4:05cv193-WS, 2009 WL 2913412, at *11–12 (N.D. Fla. Sept. 3, 2009), *aff'd sub nom. Muhammad v. Sapp*, 388 F. App'x 892 (11th Cir. 2010). Given the different legal basis and ultimate failure of that claim, it provides no aid to demonstrating a clearly established right.

claims, insofar as they seek damages against the DOC Defendants and Ahsan in their individual capacities, are dismissed without prejudice.

I note that the defendants' moving briefs do not make any qualified-immunity arguments specifically addressing Tormasi's Establishment Clause claim.  (*See* ECF Nos. 21-1 & 33-1.)  While the underlying circumstances of that claim are basically the same as those underlying the free-exercise claim, the theories are different.  Tormasi uses the free-exercise claim to challenge the simple denial of his requests for circumcision, while the Establishment Clause claim challenges the alleged attempts by prison officials to apply strictures of Orthodox Judaism to Tormasi's request.  (*See* ECF No. 4 ¶¶ 45–54.)  The specific right thus implicated appears to be not the same alleged right to a religious circumcision, but a right not to have religious requests judged by religious standards that the requester deems inapplicable.  As the moving defendants have not met their burden of showing that qualified immunity bars this claim, the Court finds no basis to dismiss it on that ground.[7]

### C.  Failure to State a Claim Against Ahsan

Ahsan separately argues that Tormasi fails to state a plausible claim against him because he was uninvolved in the RIC's decision and cannot arrange for religious circumcision surgery without NJDOC approval.  (ECF No. 33-1 at 5–10.)  Specifically, Ahsan notes that Tormasi

---

[7]  I note that the DOC Defendants do argue in their reply brief that Tormasi fails to state a claim under the Establishment Clause because prison officials "must have some latitude to reasonably consider religious requests—and consult experts with respect thereto—without fear of being accused of endorsing a particular religion or sect thereof."  (ECF No. 41.)  Arguments raised for the first time in a reply brief are not properly before the Court and need not be considered.  *See Judge v. United States*, 119 F. Supp. 2d 270, 284 (D.N.J. 2015).  In any case, even were these arguments properly before the Court, they would not warrant relief as they seem to miss the point of the claim.  Tormasi does not object to the consultation of religious experts in addressing religious questions.  Rather, he complains that the defendants refused to permit a circumcision unless he met certain requirements specific to Orthodox Judaism when he does not seek to be a member of that, or any particular, sect.  (ECF No. 4 ¶¶ 46–51.)

alleges that the RIC made the final decision to deny the circumcision request but does not allege that Ahsan is a member of the RIC. (*Id.* at 5–6.) Ahsan contends that provisions of the New Jersey Administrative Code limit the prison healthcare provider to treatment of medical conditions and do not enable Ahsan to make decisions as to religious procedures. (*Id.* at 6–8.) Ahsan further argues that he is contractually obligated to follow official DOC policy, including decisions by the RIC. (*Id.* at 9–10.)

These arguments do not directly relate to the question of whether or not Tormasi has stated a claim, instead seemingly seeking to justify Ahsan's denials of Tormasi's circumcision requests. Such arguments are not suited to the present analysis, which requires the Court to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210.

At best, these arguments may be construed as asserting that Ahsan did not have sufficient personal involvement in the alleged conduct to be held liable. "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). While the Complaint places central focus on the RIC's decisions, it still alleges personal involvement by Ahsan, insofar as Tormasi alleges that he sent a letter to Ahsan requesting circumcision and that Ahsan did not approve this request. (*See* ECF No. 4 ¶¶ 29–31; ECF No. 4-1, Ex. M, at ECF p. 61; ECF No. 4-2, Ex. Z, at ECF pp. 89–90.) These allegations are sufficient to plead personal involvement by Ahsan in the alleged wrong, i.e., denying requests for circumcision.

Thus, Ahsan has not met his burden of demonstrating that the Amended Complaint does not state a plausible claim against him. Indeed, the pertinent section of Ahsan's brief includes no citation to relevant caselaw nor any explanation of how the division of duties within the prison supports a legal conclusion that the Amended Complaint fails to state a claim against him. (*See* ECF No. 33-1 at 5–10.) Accordingly, relief on this basis is denied.

### D. RLUIPA Claims

Finally, the moving defendants argue that Tormasi fails to state a claim under RLUIPA, as his ability to practice his religion was not burdened.[8] (ECF No. 21-1 at 11–13; ECF No. 33-1 at 14–15.) The RLUIPA standard is more rigorous than that applied to free-exercise claims. *See Holt*, 135 S. Ct. at 864. The text of RLUIPA states that it "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g).

As the DOC Defendants note, prevailing on a claim requires a showing that an inmate had "a sincerely held, authentic religious belief, the exercise of which the government has substantially burdened." (ECF No. 21-1 at 11 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 (2005).) A substantial burden will be found if

> "1) a follower is forced to choose between following the precepts of his religion and forfeiting the benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs."

---

[8] As noted above, a RLUIPA plaintiff may seek only injunctive or declaratory relief," *Senato*, 704 F. App'x at 125, whereas qualified immunity applies only to claims for damages, *Hill*, 455 F.3d at 244. Thus, the Court's finding as to qualified immunity had no effect on Tormasi's RLUIPA claims.

*Washington*, 497 F.3d at 280. Here, Tormasi alleges that he sincerely believes that circumcision is one of God's highest commandments and, therefore, that he must be circumcised. (*See* ECF No. 4 ¶¶ 24–27.) The moving defendants have not challenged Tormasi's sincerity in this belief nor that circumcision is integral to Jewish religious observance.

Tormasi further alleges that the defendants have "refus[ed] to approve or provide circumcision surgery." (*Id.* ¶ 41.) This allegation of the Amended Complaint reflects an ambiguity that continues throughout Tormasi's allegations as to the precise way in which he alleges the defendants burdened his religious beliefs: whether it was allegedly an active obstruction of his efforts to undergo circumcision, or whether it was simply a passive failure to aid these efforts. Whereas some sections of the amended complaint allege that defendants "prevent[ed]" Tormasi from receiving circumcision or "failed to approve circumcision," (*id.* ¶¶ 31, 43), other sections suggest that the defendants denied requests by Tormasi to affirmatively provide a circumcision, (*see id.* ¶ 5.) While the Amended Complaint seeks as relief an order directing the defendants to affirmatively provide and pay for circumcision surgery, (ECF No. 4 at 17–18), Tormasi has also expressed that he is willing and able to pay for the procedure himself, (ECF No. 34 at 9).

Ultimately, however, the Amended Complaint must, on this motion, be read in the light most favorable to Tormasi, and the Court thus construes it as asserting that the defendants both obstructed and failed to aid Tormasi's efforts to obtain circumcision. Under this construction, I find that Tormasi has adequately pleaded that his authentic religious beliefs were substantially burdened. The obstruction of a procedure that Tormasi considers a core part of his religious practice clearly places substantial pressure on Tormasi to violate his beliefs; indeed, it seems to leave him no choice but to do so. Additionally, I note that the *Vega* court, which the moving

defendants have relied on for other purposes, ultimately concluded that the denial of circumcision imposed a substantial burden of religious exercise under RLUIPA. *Vega v. Lantz*, No. 3:04CV1215(DFM), 2013 WL 6191855, at *7 (D. Conn. Nov. 26, 2013) ("[T]he evidence indicates that Jumu'ah and circumcision are central to [plaintiff's] religious practice. The DOC's cancelation of Jumu'ah and denial of plaintiff's request for circumcision substantially burden his religious exercise.").[9]

The DOC Defendants argue that Tormasi's religious exercise is not substantially burdened because he "is not being forced to substantially modify his behavior" and because he has not alleged that "Defendants are placing any sort of active restraint on [Tormasi's] religious practice." (ECF No. 21-1 at 12–13.) The Supreme Court has explained, however, that the question of whether an authentic religious belief has been substantially burdened under RLUIPA does not permit consideration of whether the plaintiff may still exercise his religious beliefs in other ways. *See Holt*, 135 S. Ct. at 862. "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise, not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Id.* (parenthetical omitted).

The DOC Defendants' repeated emphasis that the burden alleged here is the denial of a "*state funded* circumcision" does not alter this analysis. (*See* ECF No. 20 at 12 (emphasis added).) As already discussed herein, it is not clear that Tormasi was specifically seeking a state-funded procedure, and I note that there is no suggestion that any defendant told Tormasi that cost was the basis for denying his requests or that such surgery could be approved if Tormasi provided funding. Indeed, the implication that cost posed the main obstacle to permitting

---

[9] Nevertheless, the magistrate judge ultimately recommended denial of the claim on the basis that the defendants had shown that denying circumcision was the least restrictive means of furthering compelling government interests. *Vega*, 2013 WL 6191855 at *8.

circumcision is undermined by the DOC Defendants' position that "the only obstacle to Tormasi's progress in his religious conversion appears to be his own disinterest in following the procedure laid out for him to seek a circumcision." (ECF No. 21-1 at 12.) This certainly suggests the possibility of a state-funded circumcision if Tormasi meets certain requirements. The requirements imposed, however, seem to be rules prescribed by Orthodox Judaism, which Tormasi rejects as inapplicable to non-Orthodox practitioners like him and separately challenges in his Establishment Clause claim. (*See* ECF No. 4 ¶¶ 6, 37, 45–54.) In any case, in-depth consideration of the restrictions placed on obtaining a circumcision must be reserved for a future determination as to the second prong of RLUIPA, i.e., whether the defendants can meet their burden of showing that such restrictions are the least restrictive means of furthering a compelling government interest. *See Holt*, 135 S. Ct. at 863. Accordingly, the dismissal motions will be denied as to the RLUIPA claims.

## VI.    CONCLUSION

For the foregoing reasons, the Clerk's entry of default against defendants Spritzer and El-Shebli is vacated, and Tormasi's motion for default judgment against these defendants, (ECF No. 58), is DENIED.  Furthermore, defendants Spritzer, El-Shebli, and Steven Johnson are permitted to join the DOC Defendants' motion to dismiss the Amended Complaint.  The DOC Defendants' motion to dismiss the Amended Complaint, (ECF No. 21), and Ahsan's motion to dismiss the Amended Complaint, (ECF No. 33), are GRANTED as to Tormasi's § 1983 claims and NJCRA claims under the Free Exercise Clause insofar as they seek damages from the DOC Defendants and Ahsan in their individual capacities, and the motions are otherwise DENIED.  An appropriate order follows.

DATED:  January 28, 2019                                     /s/ Freda L. Wolfson
                                                             FREDA L. WOLFSON
                                                             United States District Judge